**Claude E. HAMPTON**

v.

**STATE.**

**No. 99–385–C.A.**

Supreme Court of Rhode Island.

Dec. 24, 2001.

Thomas G. Briody, Providence, for plaintiff.

Aaron L. Weisman, Providence, for defendant.

Present: WILLIAMS, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Was a probation violator entitled to notice from either the court or his attorney about his right to appeal the violation finding? If so, was the violator entitled to post-conviction relief (PCR) based upon the failure to provide him with such notice? Even assuming that the violator's attorney should have notified him about his right to appeal from the order revoking his probation, the violator, we hold, was not entitled to post-conviction relief because he suffered no prejudice from this lack of notice.

This is the probation violator's appeal from the Superior Court's judgment denying his PCR application. At the 1998 hearing on this application, the violator, Claude E. Hampton (applicant or Hampton), alleged that when he was adjudged a probation violator in 1992, neither the

hearing justice nor his own attorney notified him of his right to appeal from that adjudication. Hampton asserted that the lack of notice by the court violated his constitutional right to due process, and that his attorney's failure to notify him of his right to appeal violated his constitutional right to effective assistance of counsel. Because the PCR hearing justice determined that Hampton was not entitled to this notice, he denied the application.

On appeal, Hampton asks this Court to reverse and to rule that the lack of notice concerning his right to appeal from the revocation of his probation violated his constitutional rights. For the reasons probed below, we decline to do so, holding that the probation-violation justice had no legal obligation to notify Hampton of his right to appeal from the violation adjudication and that the failure of Hampton's counsel to do so did not prejudice him because he was unable to show any colorable appellate issue that might have led to a reversal of the violation adjudication.

### Facts and Travel

In 1991, Hampton was convicted of assault with intent to commit first-degree sexual assault. His conviction resulted in a fifteen-year suspended sentence and fifteen years of probation. Thereafter, in August 1992, Hampton was one of a group of men who were arrested and charged with first-degree sexual assault after a highly publicized and brutal attack on a woman in a Newport park. The next

month, at Hampton's four-day probation-violation hearing, the hearing justice found that he had violated the terms of his probation. As a result, the hearing justice ordered him to serve the entire fifteen-year term of his previously suspended sentence. At no time, however, did either the hearing justice or Hampton's privately retained counsel advise him of his right to appeal from the probation-violation adjudication. Moreover, the state never indicted Hampton for the alleged misconduct that led to the revocation of his probation.

Almost six years later, while he was serving his fifteen-year prison sentence, Hampton filed this PCR application in Superior Court, seeking to vacate the finding of a probation violation as well as the fifteen-year sentence that he was serving. He alleged a due-process violation and ineffective assistance of counsel because of the hearing justice's and his attorney's failure to advise him of his right to appeal from the 1992 probation-violation adjudication. The PCR hearing justice, however, rejected applicant's contention that the probation-revocation justice had violated his constitutional rights when he failed to notify him of his right to appeal from the probation-violation adjudication. The PCR court found that the probation-violation justice had no obligation to inform Hampton of his right to appeal under Rule 32(a) of the Superior Court Rules of Criminal Procedure because the rights described in that rule did not apply to a probation-revocation hearing.[1] The court also reject-

---

1. Rule 32 of the Superior Court Rules of Criminal Procedure provides, in pertinent part, as follows:

 "(a) *Sentence.*

 "* * *

 "(2) *Notification of Right to Appeal.* After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his or her right to appeal and of the right of a person who is

unable to pay the cost of an appeal to apply for leave to be represented on appeal by the Public Defender or to appeal in forma pauperis.

"* * *

"(f) *Revocation of Probation.* The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the

ed Hampton's claim of ineffective assistance of counsel. It did so on the grounds that the attorney had no obligation to inform his client of his right to appeal the violation adjudication. Finally, the PCR hearing justice also ruled that he could not decrease Hampton's sentence because he had failed to request such a reduction within 120 days of its imposition, as required by Rule 35 of the Superior Court Rules of Criminal Procedure. The applicant filed a timely appeal.

## Standard of Review

"The determination of a hearing justice in an application for post-conviction relief will remain undisturbed on appeal unless there is clear error, or a showing that the hearing justice overlooked or misconceived material evidence." *Brennan v. Vose*, 764 A.2d 168, 174 (R.I.2001) (citing *Beagen v. State*, 705 A.2d 173, 176 (R.I. 1998)). Alleged constitutional violations, however, must be reviewed *de novo*. *Carillo v. State*, 773 A.2d 248, 252 (R.I.2001). In sum, we "afford great deference to findings of historical fact by the hearing justice but review de novo whether constitutional rights were violated in reaching ultimate conclusions drawn from those facts." *Id.*

## Analysis

### I

### Application of Rule 32

A probation-violation hearing (also referred to as probation-revocation hearing) is not part of the criminal-prosecution process; therefore, it does not call for the "full panoply of rights" normally guaranteed to defendants in criminal proceedings. *State v. Znosko*, 755 A.2d 832,

834 (R.I.2000) (quoting *State v. Kennedy*, 702 A.2d 28, 31 (R.I.1997)). Indeed, it is well established that "[a] probation-revocation hearing 'is not a prosecution but is civil in nature.'" *State v. Smith*, 721 A.2d 847, 848 (R.I.1998) (quoting *State v. Hie*, 688 A.2d 283, 284 (R.I.1996)).

The hearing justice's role during the probation-revocation hearing is to determine only "'whether in [the hearing justice's] discretion [the defendant's] conduct on the day in question had been lacking in the required good behavior expected and required by his probationary status.'" *State v. Gautier*, 774 A.2d 882, 886–87 (R.I.2001) (quoting *Znosko*, 755 A.2d at 834–35). To establish a probation violation, Rule 32(f) requires only a showing that the defendant failed to keep the peace and remain on good behavior. *Gautier*, 774 A.2d at 887. Furthermore, the state's burden of proof is to adduce reasonably satisfactory evidence of the defendant's violation of one of the terms of his probation, but not evidence establishing a violation beyond a reasonable doubt. *State v. Kennedy*, 702 A.2d 28, 31 (R.I.1997).

Consequently, it is not the hearing justice's duty to determine the defendant's criminal guilt for any of the underlying misconduct that triggered the violation hearing. *Gautier*, 774 A.2d at 887. Rather, the hearing justice's only responsibility is to determine, according to the Rule 32(f) requirements, whether he or she is reasonably satisfied that the defendant has violated one or more of the terms of his or her probation.

The applicant asserts that the hearing justice was required by Rule 32(a)(2) to advise him of his right to appeal

opportunity to be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

from the order finding him to be a probation violator. Rule 32(a)(2) provides that "[a]fter imposing sentence in a case which has gone to trial on a plea of not guilty, the court should advise the defendant of his or her right to appeal * * *." As noted earlier, however, a probation-violation hearing is not part of the criminal-trial process and a defendant therein is not afforded the same rights as in a criminal trial. *See Znosko,* 755 A.2d at 834; *Smith,* 721 A.2d at 848. Thus, even though the rights guaranteed by Rule 32(a)(2) are applicable to criminal-trial proceedings—including the previous criminal proceeding in this case that resulted in applicant's 1991 conviction and fifteen-year suspended sentence—they are inapplicable to probation-violation hearings.

The applicant also argues that, although Rule 32(f) does not specifically provide for notification to the accused of his or her right to appeal from a probation-violation adjudication, that rule should be interpreted to include that right as a minimal due-process requirement. The applicant cites *State v. Lawrence,* 658 A.2d 890 (R.I.1995) in support of this argument. In *Lawrence,* the defendant, while awaiting a probation-violation hearing, was held without bail for over ten days under circumstances beyond his control. *Id.* at 892. This incarceration violated a statute that specifically provided that a defendant held without bail while awaiting a probation-violation hearing shall not be held for more than ten days. *Id.; see also* G.L.1956 § 12–19–9. As a result, this Court found that the legislative intent was clear that the ten-day limit constituted part of the minimal due-process requirements afforded to alleged probation violators. *Lawrence,* 658 A.2d at 893.

Unlike the *Lawrence* case, however, no corresponding statute exists here indicating that minimal due-process rights for alleged probation violators in-clude the right to be notified about the opportunity to appeal from a violation adjudication. Again, probation-violation hearings do not provide the same due-process guarantees to defendants as criminal trials. *See Znosko,* 755 A.2d at 834; *Smith,* 721 A.2d at 848. Although notice to the defendant of his right to appeal is one of the rights afforded to defendants in connection with criminal proceedings, it is not mandatory for the court to do so in civil proceedings such as a probation-violation hearing. Likewise, the United States Constitution provides no such guarantee. *See, e.g., United States v. Allgood,* 48 F.Supp.2d 554, 560 (E.D.Va.1999) (holding no constitutional or other mandate required the court to inform a defendant that he has a right to appeal the outcome of the probation-violation hearing). Accordingly, we hold that the hearing justice did not violate Hampton's right to due process by failing to notify him of his right to appeal from the order finding him to be a probation violator.

## II

### Ineffective Assistance of Counsel

In Rhode Island, a defendant who is faced with the possible loss of liberty after a probation-violation hearing at which the court may order him or her to serve all or a portion of a previously suspended sentence, has the right to the effective assistance of counsel in connection with that hearing. *State v. Chabot,* 682 A.2d 1377, 1379 (R.I.1996) (citing *O'Neill v. Sharkey,* 107 R.I. 524, 527–28, 268 A.2d 720, 722 (1970)). The United States Supreme Court, however, has not yet recognized the existence of a similar federal guaranty in connection with all probation-violation hearings. In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Court considered whether, under the United States Constitution, defen-

dants were entitled to counsel at probation and parole-revocation hearings, concluding only that "[i]n some cases *** the probationer's or parolee's version of a disputed issue can fairly be represented only by a trained advocate." *Id.* at 788, 93 S.Ct. at 1763, 36 L.Ed.2d at 665. Instead of formulating a *per se* rule, however, the Court declared that "the decision as to need for counsel must be made on a case-by-case basis *** [but] fundamental fairness—the touchstone of due process—will [in some cases] require that the State provide at its expense counsel for indigent probationers or parolees." *Id.* at 790, 93 S.Ct. at 1763, 36 L.Ed.2d at 666.

 Nevertheless, for our purposes, we shall assume, without deciding, that the right to counsel at probation-revocation hearings in this state includes effective assistance in connection with preserving the right to appeal from any violation adjudication.[2] In assaying ineffective assistance-of-counsel claims, we employ the two-pronged test that the United States Supreme Court articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Brennan,* 764 A.2d at 171. First, the defendant must demonstrate that counsel's performance was deficient to the point that it "so undermined the proper functioning of the adversarial process that the [hearing] cannot be relied on as having provided a just result." *Toole v. State,* 748 A.2d 806, 809 (R.I.2000) (quoting *Tarvis v. Mor-*

*an,* 551 A.2d 699, 700 (R.I.1988)). The reviewing court must consider all surrounding circumstances when making this determination. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Second, and most important in the case at bar, the applicant must show that counsel's deficient performance was prejudicial to the defense and that counsel's errors were so serious that the applicant was deprived of a fair hearing. *Brennan,* 764 A.2d at 171. Indeed, in the case of a privately retained defense counsel, such as applicant's attorney, an ineffective-assistance-of-counsel claim will not be deemed viable "unless the attorney's representation [was] so lacking that the [hearing] ha[d] become a farce and a mockery of justice ***." *State v. Dunn,* 726 A.2d 1142, 1146 n. 4 (R.I.1999). Viewing the facts of this case in light of our case law applying the *Strickland* test, we concur with the PCR justice that applicant was not deprived of his right to effective assistance of counsel in connection with the probation-violation hearing merely because he was not informed of his right to appeal from the violation adjudication.

 In this case, the retained private attorney who represented applicant at the probation-violation hearing admitted that he had failed to discuss applicant's right to appeal with him. The applicant had been convicted previously of assault and intent to commit first-degree sexual assault. As

---

**2.** The applicant cites numerous federal cases for the proposition that an attorney's failure to appeal, upon the direction of his indigent client to do so, constitutes ineffective assistance of counsel. But there are two important distinctions between those situations and this one. First, as we have seen, the United States Constitution does not necessarily require the right to counsel at every probation-violation hearing. *See, e.g., United States v. Allgood,* 48 F.Supp.2d 554, 559 (E.D.Va.1999) (holding that there was *no* federal constitu-

tional right to effective assistance of counsel at a probation-revocation hearing). Second, unlike the defendants in the cited federal cases, this applicant never requested his lawyer to file an appeal or to advise him concerning whether to file such an appeal from the violation adjudication. Thus, we are not dealing with a situation where the defendant asked his trial attorney to take some action to protect his right to appeal, but the attorney failed to do so.

a result, he had been placed on probation with a fifteen-year suspended sentence hanging over his head. When he was arrested in 1992 for committing or aiding and abetting in another first-degree sexual assault upon a woman, he also was facing potential criminal charges in connection with that same highly publicized and extremely brutal attack. The applicant's participation in the events leading up to the attack and his presence at the scene of the crime—which constituted the factual basis for the probation-violation adjudication—were largely undisputed, even though he contested the evidence against him that suggested he was guilty of rape. Under these circumstances, his attorney devised a strategy to attempt to mitigate the sentence that applicant ultimately would have to serve as a probation violator. He recognized that the hearing justice, faced with the limited quantum of proof required in a probation-violation hearing, the brutality of the charged misconduct, and applicant's criminal record, was likely to order applicant to serve the entire suspended sentence. Consequently, he sought to persuade the hearing justice to delay lifting the suspended sentence until after the underlying criminal charges were disposed of—one way or the other— in the hope that the relative lack of evidence against his client as a perpetrator would be a mitigating factor in the length of the previously suspended sentence that the court would order him to serve. Defense counsel, however, ultimately failed to persuade the hearing justice to delay the probation-violation disposition. Consequently, after finding Hampton to be a violator, the hearing justice proceeded to lift the suspension on the full fifteen-year sentence previously imposed on him.

■ In considering the first prong of the test for gauging an assertion of ineffective assistance of counsel, this Court has held that "we will not meticulously scrutinize an attorney's reasoned judgment or strategic maneuver in the context of a claim of ineffective assistance of counsel." *Brennan*, 764 A.2d at 173 (citing *State v. Brennan*, 627 A.2d 842, 851 (R.I.1993)). We note with concern, however, the undisputed fact that, assuming *arguendo* the existence of some appealable issue, the defense attorney in this case did not even advise Hampton of his right to appeal from the violation adjudication. A defense attorney's failure to disclose to his or her client the existence of a right to appeal to challenge any reversible errors of law committed by the hearing justice in adjudicating the probation violation cannot be justified as a strategic decision. When viewed in light of all the circumstances of the case, however, we cannot say that, given the apparent lack of merit to any such appeal, counsel's conduct was so deficient as to deprive us of any confidence in the justice of the probation-violation finding, which appears to have been adjudicated correctly.

Moreover, even if the failure to disclose the right to appeal had amounted to defective assistance of counsel, Hampton still would have had to satisfy the second prong of the *Strickland* test. Here, applicant has failed to demonstrate how he was prejudiced in any manner by the failure to notify him of his right to appeal from the violation adjudication. Even if the hearing justice had agreed to delay the probation-violation disposition until the potential for Hampton's indictment on the underlying criminal charges had dissipated, the outcome of the probation-violation hearing would not have been different. The defense lawyer's primary concerns about his client's facing a potential felony indictment and subsequent criminal trial were not unreasonable under the circumstances. And the state's failure to indict applicant was not an occurrence that applicant's lawyer

was bound to have anticipated. Moreover, the lack of an indictment on the underlying wrongdoing would not have been relevant to applicant's culpability as a probation violator or to the amount of the suspended sentence he should serve as a violator. Indeed, presumably this is the very reason why the probation-violation justice rejected applicant's request to delay the disposition on the violation adjudication.

In short, applicant failed to show the PCR hearing justice how he was prejudiced by his counsel's failure to inform him of his right to appeal. Significantly, he has failed to articulate any colorable basis on which he could have appealed successfully from the violation adjudication. And even though the appeal period for the probation-violation adjudication has long since expired, applicant still could seek appellate review of this adjudication by petitioning this Court for a writ of common-law certiorari. In the past, this Court has allowed such petitions after a party failed to file a timely notice of appeal. *See, e.g., In re Caldarone*, 115 R.I. 316, 320, 345 A.2d 871, 873 (1975). Finally, applicant has failed to advance any arguments that might have been successful in reducing his sentence— even if we were to assume, without deciding, that the Superior Court would have been able to entertain a motion to reduce the sentence it had ordered him to serve after the court had revoked his probation and after this Court had denied his appeal. Consequently, his ineffective-assistance-of-counsel argument does not pass muster under the applicable tests for establishing such a claim.

In sum, the applicant was not the victim of ineffective assistance of counsel at the violation hearing when his counsel failed to inform him of his right to appeal the violation adjudication. In this case, the applicant was unable to demonstrate how he was prejudiced by the failure of his counsel

to inform him of his right to appeal from that adjudication.

### Conclusion

For these reasons, we deny Hampton's appeal and affirm the judgment of the Superior Court denying his application for post-conviction relief.